IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA RUTH DENSMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:09cv915-WC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff Sandra Ruth Densmore applied for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383c.  Her application was denied at the initial administrative level.  Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ).  Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the Court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment

---

[1]Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. #14);

Def.'s Consent to Jurisdiction (Doc. #13).  Based on the Court's review of the record and the

briefs of the parties, the Court AFFIRMS the decision of the Commissioner.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of
> Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

---

[2]     A "physical or mental impairment" is one resulting from anatomical,
physiological, or psychological abnormalities which are demonstrable by medically acceptable
clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an

---

[3]        *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4]        *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The Court's review of the Commissioner's decision is a limited one.  This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);  *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

4

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-nine years old at the time of the hearing before the ALJ, and had a high school education (Tr. 17).  Plaintiff's past relevant work experience was as a child monitor.  *Id*.  At Step 1, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  *Id*.  At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: mild to moderate receptive and expressive language delay, mild articulation disorder, borderline intellectual functioning, and personality disorder.  (Tr. 19).  However, the ALJ determined that neither Plaintiff's impairments, nor a combination of her impairments meets or medically equals one of the listed impairments.  *Id*.  Next, the ALJ found that Plaintiff retained the RFC to perform work activity within the restrictions expressed at page 3 of the Mental RFC Assessment form(Tr. 112), along with the following additional limitations: "simple, unskilled, repetitive, and routine tasks; low stress; non-responsible or regular general public contact must be brief and superficial; work primarily alone; require little independent judgment; and routine changes, no multiple or rapid changes." (Tr. 20).  At Step 4, the ALJ found that Plaintiff is unable to perform past relevant work.  *Id*.  Next, the ALJ found that, given Plaintiff's age, education, work experience, and RFC, and after consulting with a vocational expert, "there are a significant number of jobs in the national economy that she can perform," including: "housekeeper, laundry worker, and small products assembler." (Step 5) *Id*.  Accordingly, the ALJ determined that Plaintiff had not been under a disability during the relevant time period.  (Tr. 21).

IV.    **PLAINTIFF'S CLAIMS**

Plaintiff presents three claims for this Court's review: (1) whether "[t]he ALJ failed to apply the proper legal standards and to state adequate reasons for his conclusions regarding medical source evidence;" (2) whether "[t]he ALJ failed to apply proper legal standards by ignoring the testimony of the lay witness, the plaintiff's sister;" and (3) whether "[t]he ALJ failed to follow proper legal standards in finding the plaintiff did not meet listing 12.05 C." Pl.'s Brief (Doc. #10) at 8 & 11. The Court will address each of these claims below.

    *A.     The medical source evidence*

After considering the opinion of the consultive examiner, Dr. Stutts, the ALJ determined that Dr. Stutts's opinion was "entitled to little probative weight." (Tr. 18). Plaintiff argues that the ALJ failed to apply proper legal standards in rejecting Dr. Stutts's opinion and adequately state his reasons for doing so. Specifically, Plaintiff states that substantial evidence does not support the ALJ's rejection of Dr. Stutts's opinion and that the ALJ substituted his own opinion for that of the trained expert. Pl.'s Brief (Doc. #10) at 9-10.

While an examining psychologist's opinion is usually treated with deference, an ALJ is free to disregard the opinion if he clearly articulates good cause. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical

records." *Id*. at 1240-41.

Here, the ALJ determined that Dr. Stutts's opinion was inconsistent with record evidence. Specifically, the ALJ compared Dr. Stutts's diagnosis of social anxiety disorder or dysthymic disorder with the evidence that Plaintiff lives alone, cooks and cleans, drives, performs yard work and errands, cares for her pet, cares for her own personal needs, reads, shops, leaves the house 3-5 times per week, visits friends, is very active in attending church, goes to art and craft fairs, gets along well with everyone, and talks on the telephone. (Tr. 18). The ALJ also compared Dr. Stutts's opinion that Plaintiff had moderate to marked limitations in the ability to maintain social functioning and respond appropriately to co-workers with evidence that Plaintiff is very active attending church, shops, attends arts and craft fairs, visits with others, and talks to others on the phone. *Id*. Because the ALJ determined that these activities were inconsistent with Dr. Stutts's diagnosis, he accorded the opinion little probative value.

The ALJ's determination is supported by substantial evidence. In addition to the inconsistencies with the record evidence, Dr. Stutts's opinion appears to be at odds with Dr. Summerlin's findings that Plaintiff denied experiencing severe depression or anxiety, she had an average ability to maintain attention and concentration, and that her affect and mood were appropriate. (Tr. 18). Further, Dr. Dennis, the non-examining state agency medical examiner, determined that Plaintiff was only mildly restricted in her activities of daily living, had moderate difficulties in maintaining social functioning, moderate difficulties in

7

maintaining concentration, persistence, or pace, and had no episodes of decompensation.  (Tr. 124).

Accordingly, the Court finds no error in the ALJ's decision to disregard Dr. Stutts's opinion.

### B.    *Testimony of the Lay Witness*

At the hearing before the ALJ, Plaintiff's sister, Ms. Henry, testified that Plaintiff's limitations would limit her ability to sustain competitive work because she would not volunteer information, had problems in school, suffered a lifelong history of shyness, had trouble communicating, was slow, and did not manage time well.  (Tr. 148-150).  When the ALJ asked the VE to consider a hypothetical person who suffered from the limitations described by Plaintiff and Ms. Henry, and asked the VE if such a person was capable of any work, the VE stated that such a person would not be capable.  (Tr. 154).  While the ALJ expressly rejected Plaintiff's testimony as not credible, (Tr. 20), he did not discuss Ms. Henry's testimony.

Plaintiff argues that the ALJ's failure to expressly reject Ms. Henry's testimony was, "in effect, an acceptance of the testimony as credible; therefore, his finding that the [P]laintiff can perform competitive unskilled work is not supported by substantial evidence and [Plaintiff] is entitled to a finding of disability."  Pl.'s Brief (Doc. #10) at 11.  Defendant argues that the ALJ's failure to discuss Ms. Henry's testimony is not reversible error and does not mean that the ALJ failed to consider it.  Def.'s Brief (Doc. #11) at 9-10.

First, it is not fatal to the ALJ's decision that he failed to discuss every piece of evidence submitted for his consideration.  *See Wilkinson v. Comm'r of Soc. Sec.*, 289 F. App'x. 384, at 386 (11th Cir. 2008) ("ALJ was not required to list in detail every bit of evidence he relied on to reach [his] decision."); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.").  The Court will not reverse "so long as the ALJ's decision, as was not the case here, is not a broad rejection which is not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id*. (quoting Foote, 67 F.3d at 1561).  Instead, the Court will look to "whether the ALJ's conclusion as a whole was supported by substantial evidence in the record." *Id*.

Second, that the ALJ considered and rejected Ms. Henry's testimony is obvious from the record.  *See Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (recognizing that an ALJ may make implied findings).  Ms. Henry's testimony was similar to Plaintiff's - that Plaintiff's limitations precluded work.  The ALJ expressly rejected Plaintiff's testimony as inconsistent with the RFC and, thus, implicitly rejected Ms. Henry's testimony.  *See Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006) ("Even if the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, however, we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony."); *see also Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

9

Further, it is clear the ALJ considered Ms. Henry's testimony when he asked the VE the hypothetical question, taking into account Ms. Henry's testimony. In relying on the VE's testimony that there were jobs available that fit within the RFC determination, the ALJ rejected Ms. Henry's testimony. Similar to Dr. Stutts's opinion, Ms. Henry's (and Plaintiff's) testimony regarding Plaintiff's ability to work was inconsistent with record evidence regarding her daily life activities, and Dr. Dennis's opinion. Accordingly, the ALJ was free to reject Ms. Henry's testimony.

### C.    Listing 12.05C

Plaintiff argues "the ALJ committed error by failing to find that [she] met the criteria under 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C) [(Listing 12.05C)]." Pl.'s Brief (Doc. #10) at 12. Listing 12.05C, the mental retardation section of the Listing of Impairments (Listings), is met with "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." Listing 12.05C.

> Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities. *See Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir. 1985). This court, however, has recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

Plaintiff's arguments in support of this claim appear to rely on a misunderstanding of the record.  Plaintiff states that the ALJ ignored Plaintiff's IQ scores as reported by Dr. Summerlin and Psychologist Dr. Thornton, and instead, relied on his own lay opinion to state that Plaintiff suffered borderline intellectual functioning rather than mental retardation.  In fact, the ALJ relied on Dr. Summerlin's diagnosis that Plaintiff was in the borderline intellectual functioning range. (Tr. 18).

There was no medical opinion put forth in the record that Plaintiff was mentally retarded.  Dr. Summerlin found Plaintiff to be in the borderline intellectual functioning range based, in part, on a verbal IQ score of 70, a performance score of 83, and a full scale score of 74. (Tr. 128).  Dr. Thornton's IQ examination revealed a verbal score of 72, a performance score of 87, and a full scale IQ score of 77.[5]  (Tr. 108).  In addition, both doctors noted that Plaintiff, a high school graduate, was in regular classes at school, with the exception of some special education classes in Math and English. Further, the evidence of Plaintiff's daily activities, including her prior marriages, her ability to drive, serving as the primary caretaker for her terminally ill first husband, her ability to live by herself, and to make art and crafts, support the ALJ's determination of the RFC and a rejection of Plaintiff's claim that she met the listing of 12.05C.

VI.   CONCLUSION

The Court has carefully and independently reviewed the record and concludes the

---

[5]  Even Dr. Stutts estimated that Plaintiff was in the borderline range. (TR. 132).

decision of the Commissioner is supported by substantial evidence and is, therefore, AFFIRMED.  A separate judgment will issue.

DONE this 16th day of September, 2010.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE